IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Sylvester Anterrio Boone, ) | C/A No. 0:15-1503-MGL-PJG |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | **REPORT AND RECOMMENDATION** |
| ) | |
| Warden Benard Mackie, ) | |
| ) | |
| Respondent. ) | |
| _____ ) | |

Petitioner Sylvester Anterrio Boone, a self-represented state prisoner, filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter comes before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.) for a Report and Recommendation on the respondent's motion for summary judgment. (ECF No. 16.) Pursuant to <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975), Boone was advised of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to the respondent's motion. (ECF No. 17.) Boone filed a response in opposition to the respondent's motion. (ECF No. 19.) Having carefully considered the parties' submissions and the record in this case, the court concludes that the respondent's motion for summary judgment should be granted and Boone's Petition denied.

**BACKGROUND**

Boone was indicted in February 2010 in Richland County for kidnapping, armed robbery, and two counts of assault with intent to kill (2010-GS-40-10499, -10500, -10501, -10502). Boone was represented by April Sampson, Esquire, and on May 28, 2010 pled guilty as charged. The circuit court sentenced Boone to twenty years' imprisonment for kidnapping and twenty years'

imprisonment for armed robbery, both sentences to run concurrently, and seven years' imprisonment for each count of assault with intent to kill, both sentences to run concurrently to each other but consecutively to the twenty-year sentence, for a total aggregate sentence of twenty-seven years' imprisonment.  (App. at 81, ECF No. 15-9 at 83.)

Boone filed a direct appeal, but his appeal was dismissed by the South Carolina Court of Appeals.  Boone then filed an application for post-conviction relief ("PCR").  The state circuit court denied Boone's PCR application.  Counsel for Boone petitioned the South Carolina Supreme Court via a Johnson[1] petition for a writ of certiorari, which was denied.  This action followed.

## FEDERAL HABEAS ISSUE

Having exhausted his state remedies, Boone asserts the following issue in the instant petition for a writ of habeas corpus:

> **Ground One:** Mr. Boone (petitioner) was denied his right to effective assistance of counsel under the Sixth Amendment to the United States Constitution when plea counsel failed to present critical mitigating evidence during the sentencing phase of hearing.
>
> **(a) Supporting Facts:** Plea counsel had available to her mitigating evidence that would have established and verified petitioner[']s extremely low level of intelligence, thus influencing the sentencing of petitioner.  During the plea process counsel presented only two pieces of mitigating evidence:  1) the mother, 2) the father.  Counsel did not inform the plea Judge of petitioner[']s extremely low IQ or his history of having special needs.

---

[1] Johnson v. State, 364 S.E.2d 201 (S.C. 1988) (applying the factors in Anders v. California, 386 U.S. 738 (1967) to post-conviction appeals).  Anders requires that counsel who seeks to withdraw after finding the "case to be wholly frivolous" following a "conscientious examination" must submit a brief referencing anything in the record that arguably could support an appeal; furnish a copy of that brief to the defendant; and after providing the defendant with an opportunity to respond, the reviewing court must conduct a full examination of the proceedings to determine if further review is merited.  Anders, 386 U.S. at 744.



Petitioner was arrested at age seventeen (17) but was only functioning mentally on an elementary level. At post conviction documentary evidence was presented to show that the petitioner was mentally much "slower", also younger, and was clearly a "follower" of the codefendants.[*] Petitioner[']s mother testified at the PCR that plea counsel had informed her and the petitioner that the plea arrangement was for a ten (10) year deal. Plea counsel admitted at PCR that petitioner was a follower and much slower than his peers. Counsel also stated that she was not sure if she pointed out to the Judge that the petitioner had special needs.

The record shows that counsel did not present the mitigating evidence that would have highlighted petitioner[']s mental illness and competency issues. Counsel also admits that "it could have had an influence". Counsel intentionally chose not to allow the proper mitigating evidence to be presented during the sentencing proceeding. Available to counsel was good character witnesses from the petitioner[']s: pastor, multiple teachers, and many other credible witnesses from the community, along with his school records showing his special needs. Fourteen (14) of those witnesses were present at the PCR hearing and were ready to testify that their desire was to speak on behalf of the petitioner[']s impressionability, remorse, special needs. Counsel acknowledges that she was "surprised by the length of the sentence" and admits she had over ten (10) pieces of mitigating evidence, but she chose not to present that evidence to the court.

Counsel cannot be considered to have made an informed decision. Due to the fact that she never investigated or even spoke with the witnesses to know which piece of testimonial evidence would have had the most influential mitigating weight, counsel cannot be said to have made a reasonable strategic decision because she never investigated the information she would need in order to make an informed strategic choice [].

The focus point in petitioner[']s claim is on the mitigating evidence that was available and should have presented to influence the sentencing of petitioner. Not only was this performance by counsel deficient but because of her negligence in unprofessional oversight these errors prejudiced the petitioner during the sentencing phase of the plea proceeding. Had counsel[']s performance not been deficient there is a reasonable probability the sentence but would have been different in the extent of its leniency.

---

[*] Petitioner received considerably more time than both of the co-defendants.

(Pet., ECF No. 1) (errors in original).



**DISCUSSION**

A.     **Summary Judgment Standard**

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Rule 56 mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

The moving party has the burden of proving that summary judgment is appropriate. Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(c), (e); Celotex Corp., 477 U.S. at 322. Further, while the federal court is charged with liberally construing a petition filed by a *pro se* litigant to allow the development of a potentially meritorious case, see, e.g.,

Page 4 of 15



Cruz v. Beto, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

**B.     Habeas Corpus Standard of Review**

In accordance with the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), claims adjudicated on the merits in a state court proceeding cannot be a basis for federal habeas corpus relief unless the decision was "contrary to, or involved an unreasonable application of clearly established federal law as decided by the Supreme Court of the United States," or the decision "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(1), (2).  When reviewing a state court's application of federal law, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." Williams v. Taylor, 529 U.S. 362, 410 (2000); see also White v. Woodall, 134 S. Ct. 1697, 1702 (2014) (describing an "unreasonable application" as "objectively unreasonable, not merely wrong" and that "even clear error will not suffice") (internal quotation marks and citation omitted); Harrington v. Richter, 562 U.S. 86, 100 (2011); Humphries v. Ozmint, 397 F.3d 206 (4th Cir. 2005); McHone v. Polk, 392 F.3d 691 (4th Cir. 2004).  Moreover, state court factual determinations are presumed to be correct and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).



"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington, 562 U.S. at 101 (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)); see also White, 134 S. Ct. at 1702 (stating that " '[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement' ") (alteration in original) (quoting Harrington, 562 U.S. at 103). Under the AEDPA, a state court's decision "must be granted a deference and latitude that are not in operation" when the case is being considered on direct review. Harrington, 562 U.S. at 101. Moreover, review of a state court decision under the AEDPA standard does not require an opinion from the state court explaining its reasoning. See id. at 98 (finding that "[t]here is no text in [§ 2254] requiring a statement of reasons" by the state court). If no explanation accompanies the state court's decision, a federal habeas petitioner must show that there was no reasonable basis for the state court to deny relief. Id. Pursuant to § 2254(d), a federal habeas court must (1) determine what arguments or theories supported or could have supported the state court's decision; and then (2) ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding of a prior decision of the United States Supreme Court. Id. at 102. "If this standard is difficult to meet, that is because it was meant to be." Id. Section 2254(d) codifies the view that habeas corpus is a " 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." Id. at 102-03 (quoting Jackson v. Virginia, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in judgment)).

PJG

C.     **Summary Judgment Motion**

In the sole ground for relief raised in the instant habeas petition, Boone asserts that plea counsel failed to provide effective assistance of counsel by failing to present sufficient mitigating evidence at his sentencing proceeding. (ECF No. 1 at 4.) Specifically, Boone argues that his pastor, multiple teachers, and other credible community witnesses were available to plea counsel and would have testified to his impressionability and remorse. Further, Boone submits that school records showing his special needs should have been presented as mitigating evidence. (Id.)

A defendant has a constitutional right to the effective assistance of counsel. To demonstrate ineffective assistance of counsel, a petitioner must show, pursuant to the two-prong test enunciated in Strickland v. Washington, 466 U.S. 668 (1984), that (1) his counsel was deficient in his representation and (2) he was prejudiced as a result. Id. at 687; see also Williams v. Taylor, 529 U.S. 362, 391 (2000) (stating that "the Strickland test provides sufficient guidance for resolving virtually all ineffective-assistance-of-counsel claims"). To satisfy the first prong of Strickland, a petitioner must show that plea counsel's errors were so serious that his performance was below the objective standard of reasonableness guaranteed by the Sixth Amendment to the United States Constitution. With regard to the second prong of Strickland, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.

The United States Supreme Court has cautioned federal habeas courts to "guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d)." Harrington, 562 U.S. at 105. The Court observed that while " '[s]urmounting Strickland's high bar is never an easy task[,]' . . . [e]stablishing that a state court's application of Strickland was



unreasonable under § 2254(d) is all the more difficult." Id. (quoting Padilla v. Kentucky, 559 U.S. 356, 371 (2010)). The Court instructed that the standards created under Strickland and § 2254(d) are both " 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." Id. (citations omitted). Thus, when a federal habeas court reviews a state court's determination regarding an ineffective assistance of counsel claim, "[t]he question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Id.

Although the Supreme Court has held that a decision containing a reasoned explanation is not required from the state court, in the case at bar this court has the benefit of the PCR court's written opinion, certiorari review of which was denied by the South Carolina Court of Appeals, which may provide reasons or theories that the appellate court could have relied upon in summarily denying Boone's Petition. Having reviewed the PCR court's order pursuant to the § 2254 standard, the court finds for the reasons that follow that the state court did not unreasonably misapply the Strickland test in determining that no Sixth Amendment violation occurred.

As summarized by the PCR court, Boone, his plea counsel, and two witnesses, Ramona Richardson and April Horry, testified at the PCR hearing as follows:

> Applicant [Boone] started by stating he was aware of the potential consequences of having his application granted, including going back to trial to face a substantial amount of jail time, but wanted to continue to pursue relief. Applicant testified he didn't plan the robbery that took place; rather, he said, it was a "last minute thing" that occurred without planning. He readily admitted he was aware his plea was entered without recommendation or negotiations, and that he potentially could have received essentially a life sentence under the plea. Applicant went on to identify several documents introduced into the record as certificates from the Department of Corrections showing various accomplishments he has achieved while incarcerated. He finished by stating he wanted to voluntarily waive the allegation in his application regarding counsel's failure to file/perfect a direct appeal on his behalf. On cross-examination, Applicant agreed he had told the plea judge he was guilty of



the crimes charged and did have a gun on him at the time of the robbery. He also conceded he told the plea judge under oath that he was satisfied with counsel's representation of him, thought she had done everything he wanted her to do to prepare his case, and that he was entering the plea freely and voluntarily.

Also testifying at the hearing was Sandra Boone, Applicant's mother. Ms. Boone stated Applicant admitted his involvement in the crimes "from the start" after being arrested, and that he was the youngest of the suspects at seventeen (17) years old, while his two co-defendants were both nineteen (19) years old. Regarding the original plea hearing on May 27, 2010, Ms. Boone recalled Judge James asking Applicant's co-defendant first which one of them had the gun during the incident, thereafter turning to Applicant to ask the same question when co-defendant denied possessing a weapon. Ms. Boone said Judge James called off the plea hearing after none of the defendants would confess to carrying the gun used in the crime, but noted Judge James didn't appear to be angry or upset when he did so. She said counsel told her Applicant could come back the next day to complete the plea. Ms. Boone conceded Applicant entered the plea "straight up" the next day, but thought he would get a ten (10) year sentence on the plea. She went on to say she and Applicant's father spoke on Applicant's behalf at the plea hearing, but counsel did not introduce any of Applicant's school records, nor did she allow several people to speak on Applicant's behalf in mitigation including Applicant's minister. Ms. Boone stated Applicant was at a fourth grade reading level,* but was a "model student". She also stressed the point that Applicant was "a follower". She finished by saying counsel should have brought in some of Applicant's school teachers to tell the court about Applicant as a good student. On cross-examination, Ms. Boone conceded she did request the plea judge "have some mercy" on Applicant and "don't give him to the maximum", despite alleging she believed Applicant was entering his plea for a ten year sentence. She also acknowledged that counsel handed up numerous letters written by community members on Applicant's behalf to the plea judge during the plea, which the lat[t]er said he read in chambers prior to sentencing.

---

\* The records before this Court reflect this allegation of Applicant being at a "fourth grade reading level" to be without merit. While the "Special Education Committee Report" introduced as part of the record does note Applicant has the ability to "construct sentences that make sense at a grade level 4," this report was issued based on an evaluation performed August 24, 2003. The evaluation reflects his abilities at age eleven (11), more than six (6) years before the current crimes occurred.

Also testifying on Applicant's behalf were Ramona Richardson ("Richardson") and April Horry ("Horry"). Ms. Richardson testified she was not asked to speak on Applicant's behalf at his plea hearing, but would have told the plea judge that Applicant was a respectful child to his mother and a "follower" when it comes to his peers. She went on to say she was at work on the day of Applicant's plea, but knew the hearing was occurring and didn't attend. Ms. Horry testified she had known Applicant for six (6) years from their neighborhood and school. She, likewise, stated she was not asked by counsel to speak on Applicant's behalf at his plea, but if she had, she would have told the plea judge Applicant was a "good kid" but "a follower." Counsel then noted roughly fourteen (14) people in the courtroom at the PCR hearing who would have been willing to give testimony as to Applicant's good character at his plea hearing.

Counsel testified she was appointed to represent Applicant on the charges in December of 2009 after the Public Defender's Office was conflicted out of representing him. Counsel noted she had previously worked as the Deputy Chief Public Defender for the 5th Circuit, but at the time of Applicant's case was in private practice. She stated during her meetings with Applicant, she was able to review with him the charges he was facing, his constitutional rights, the potential jail time he was facing, the entirety of the discovery file, and Applicant's version of the facts leading to the charges. She also noted from the outset of her representation, Applicant admitted his guilt and did not want a trial, but rather wanted to plead guilty to the least amount of time possible. Counsel testified Applicant's mother was very involved and she spoke with his mother regularly.

Turning to the facts and evidence in the case, counsel said Applicant and his co-defendants were "caught red handed", pointing out a victim had followed the suspects' car from the scene while speaking with 911 operators giving a detailed description of the car; Applicant was caught by a law enforcement K-9 unit hiding in an abandoned shed with quantities of money stuffed in his pockets and waistband; and all three defendants gave full confessions to police upon their arrest. Counsel stated there were no plea negotiations entered into as the solicitor prosecuting the case made it well known no plea offers would be extended. Counsel said she explained this to Applicant, which she believed he fully understood. She went on to say she told Applicant she would request the minimum sentence when he pled, but fully advised Applicant of the range he was facing if the judge ran the sentences consecutively.

Regarding mitigation at the plea, counsel testified she introduced seven letters to the plea judge's consideration, including: two from Applicant's school; one from a close friend specifically noting Applicant was "a follower"; one from Applicant's grandfather; and one from James Johnson, the director of the "Coaches Program" for troubled youths, stating he would gladly accept Applicant into the program. Counsel said she believed introducing the letters was a stronger strategy than bringing all of



the witnesses into the courtroom to present live statements since she had seen such mitigation backfire before, especially where judges see a defendant has a "great support system" but still chose to commit a crime. She noted the same to be true in bringing preachers/ministers in on a defendant's behalf. She also recognized that many judges limit the number of people who are allowed to give live statements on a defendant's behalf at a plea hearing so she likely could not have presented all of the witnesses who attended the PCR hearing. Counsel said she didn't feel the need to introduce Applicant's school records independently in mitigation as she felt the "presentation" given to the court fully encompassed the same information. Counsel explicitly testified she "thought [Applicant] and his family did a great job" in mitigation.

Finally, counsel stated she was "shocked" at the sentence Applicant received under the plea, but said in hindsight she believed Judge James probably did not like Applicant's initial failure to admit he had been carrying a gun during the incident. Counsel said she tried to soften Applicant's failure to admit to the gun by stressing that Applicant was scared, but Judge James made it clear to her after the plea that he did not like Applicant's failure to take responsibility.

Based on the testimony presented at the hearing in conjunction with a thorough review of the plea transcript, this Court finds Applicant failed to carry his burden in proving counsel was ineffective in her representation. Further, this Court finds counsel's testimony to be credible, while conversely finding Applicant's testimony to be incredible.

First, counsel's performance was not objectively unreasonable in this regard. Counsel reviewed all pertinent materials related to the case with Applicant, and gave Applicant all the information and advice necessary to make an informed and voluntary decision on whether to enter a plea or proceed to trial. Applicant, having full knowledge of the potential consequences, made the willing decision to enter the plea as he did, without negotiations or recommendations from the State. Counsel undertook diligent and thorough preparations to present strong mitigation on Applicant's behalf at the plea, and was able to do so effectively with the statements and letters introduced. Based on her several years experience appearing before judges in the Fifth Circuit, she made a reasonable strategic decision not to present the Court with statements from every individual willing to speak about Applicant. Rather, she chose to introduce only a moderate number of diverse, compelling recommendations in an effort to make the strongest possible plea for leniency. See Whitehead v. State, 308 S.C. 119, 417 S.E.2d 530 (1992) (Where counsel articulates valid reasons for employing a certain strategy, counsel's choice of tactics will not be deemed ineffective assistance). This Court finds counsel's tactics were well-considered and objectively reasonable. Accordingly, this Court finds Applicant has failed to carry his burden in proving counsel's performance fell outside of the



>wide range of reasonableness required of criminal defense attorneys based on professional norms.
>
>Further, this Court finds Applicant has failed to prove resulting prejudice based on this alleged deficiency as he has failed to convince this court that, had counsel presented the items/witnesses in mitigation Applicant alleges she should have, Applicant would have received a lesser sentence than he did. Counsel's plain and credible testimony was the plea judge was "not happy" Applicant chose not to accept accountability at first for being one of the defendants in possession of a gun during the robbery. Counsel presented a thorough and effective statement in mitigation on Applicant's behalf, through which she presented Applicant's education, reputation as a student, willingness to accept responsibility from the outset of her representation, remorse for his actions, accomplishments since being incarcerated, and brief mental health issues since his arrest. She also introduced letters from various individuals, which the judge read in chambers prior to sentencing. This Court finds no reasonable probability that presenting the additional witnesses/items in mitigation would have affected the sentence Applicant received.

(App. at 166-71, ECF No. 15-9 at 168-73.)

As an initial matter, in denying and dismissing Boone's application, as cited above, the PCR court found plea counsel's testimony to be credible and Boone's testimony incredible. (Id.) Boone has failed to challenge this finding and therefore has not provided any information to clearly show that the credibility determination in the PCR court's order is without support. See Elmore v. Ozmint, 661 F.3d 783, 850 (4th Cir. 2011) ("We must be 'especially' deferential to the state PCR court's findings on witness credibility, and we will not overturn the court's credibility judgments unless its error is 'stark and clear.' ") (quoting Sharpe v. Bell, 593 F.3d 372, 378 (4th Cir. 2010) and Cagle v. Branker, 520 F.3d 320, 324 (4th Cir. 2008)).

The PCR court rejected the assertion that presenting the additional witnesses/items at mitigation would have affected the sentence Boone received. A review of the transcript of the plea hearing reveals that plea counsel presented a mitigation defense. First, prior to sentencing, plea counsel submitted support letters from family and friends "talking about how wonderful of a student



he was, how he wasn't problematic." (App. at 73, ECF No. 15-9 at 75.) Second, plea counsel advocated for her client, conveying his remorse and noting that Boone wanted to contact the victims but was discouraged from doing so by counsel. Third, plea counsel called Boone's father and mother, both of whom pled on Boone's behalf at sentencing. Mrs. Boone's testimony included a statement that her son had been in special education classes and was slow. (App. at 73-80, ECF No. 15-9 at 75-82.) In support of his habeas petition, Boone references school records indicating that he "can only recognize words at a grade 4 level" and "spell words at grade level 2." (Petr.'s Mem. Opp'n Summ. J. at 2, ECF No. 19 at 2, citing ECF No. 15-10 at 6.) However, the record confirms, as noted by the PCR court, that the cited records are dated 2003-04 when Boone was in sixth grade. (Id.) Consequently, Boone has failed to show the PCR court unreasonably applied United States Supreme Court precedent in deciding that Boone had not met his burden under Strickland to show that plea counsel was ineffective in her mitigation presentation at the sentencing proceeding. Additionally, Boone has failed to show by clear and convincing evidence the PCR court reached an unreasonable factual determination of this issue given the evidence and record before it.

Upon careful review of the record and the PCR court's order, for all of the reasons discussed by the PCR court, the court concludes that Boone has failed to establish that plea counsel's actions were error, much less that they were objectively unreasonable such that it rendered her performance deficient. Boone's arguments fail to demonstrate that any of the PCR court's findings were unreasonable nor have they shown that the PCR court's analysis of these issues misapplied clearly established federal law or, even if there was an error, that it was unreasonable. See Williams, 529 U.S. at 410; see also Harrington, 562 U.S. at 101. Accordingly, the respondent's motion for summary judgment should be granted.



## RECOMMENDATION

For the foregoing reasons, the court recommends that the respondent's motion for summary judgment (ECF No. 16) be granted and Boone's Petition denied.

                                              *(signature)*
                                              Paige J. Gossett
                                              UNITED STATES MAGISTRATE JUDGE

December 15, 2015
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).